## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **YAZAN SALEH**, and **RONALD E. STEVENS**, individually, and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| **DARDEN RESTAURANTS, INC.**, a Florida corporation, | ) ) ) |
| Defendant. | ) |

**CASE NO.:**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
## FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

1. This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"), which requires Defendant to truncate certain credit card information on electronically printed receipts. Despite the clear language of the statute, and having been sued for the identical FACTA violation in the past, Defendant is once again in willful, knowing, and reckless disregard of the statute. As such, Plaintiffs and certain other consumers who conducted business with Defendant during the time frame relevant to this complaint, each of whom paid for goods using a credit or debit card and were entitled to receive a truncated receipt, suffered violations of § 1681c(g). As a result of Defendant's unlawful conduct, Plaintiffs and the proposed class's substantive rights under FACTA were violated and therefore they are entitled to an award of statutory damages and other relief as further detailed herein.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendant conducts business in this district and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

4. Plaintiff Yazan Saleh ("Plaintiff Saleh") is a natural person who, at all times relevant herein, resides in Broward County, Florida.

5. Plaintiff Ronald E. Stevens ("Plaintiff Stevens") is a natural person who, at all times relevant herein, resides in Broward County, Florida.

6. Defendant, Darden Restaurants, Inc. ("Darden"), is a Florida corporation whose principal address is 1000 Darden Center Drive, Orlando, FL 32837, and whose registered agent for service of process is in the state of Florida is Corporate Creations Network, Inc., 11380 Prosperity Farms Road, Suite 221E, Palm Beach Gardens, FL 33410.

7. According to Defendant's 2016 Form 10-K Report, Darden is a full-service restaurant company, and as of May 29, 2016, owned and operated 1,536 restaurants through subsidiaries in the United States and Canada under the Olive Garden®, LongHorn Steakhouse®, The Capital Grille®, Yard House®, Seasons 52®, Bahama Breeze®, and Eddie V's Prime Seafood® and Wildfish Seafood Grille® ("Eddie V's") trademarks.

8. Additionally, from Darden's 2016 Annual Report to Shareholders: "**We own and operate all of our restaurants** in the United States and Canada, except for 6 joint venture restaurants managed by us and 18 franchised restaurants." (emphasis added).

9. Darden controls every aspect of its restaurant operations, including receipt-printing equipment. Since 2005, Darden has mandated and overseen the use of NCR Point of Sale ("POS") equipment in every one of its restaurants in the United States.[1]

10. Darden controls the POS systems used in all of their locations. In fact, Darden's success is heavily attributable to their ability to monitor sales trends from all their stores because of the orchestrated POS system uniformity that they have implemented.[2,3]

11. Darden's control over all aspects of company operations is so pervasive that all of Darden's restaurants run off the same company network by a software package produced by PeopleSoft, a subsidiary of Oracle Corporation.

## FACTUAL ALLEGATIONS

### BACKGROUND OF FACTA

12. Identity theft is a serious issue affecting both consumers and businesses. In 2015, the FTC received over 490,000 consumer complaints about identity theft, representing a 47 percent increase over the prior year, and the Department of Justice estimates that 17.6 million Americans were victims of identity theft in 2014.[4]

13. Congress enacted FACTA to prevent actual harm. See Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

---

[1] https://www.innovativeretailtechnologies.com/doc/darden-picks-ncr-for-pos-000.
[2] http://www.informationweek.com/strategic-cio/executive-insights-and-innovation/darden-uses-analytics-to-understand-restaurant-customers/d/d-id/1141551 (last accessed August 29, 2017).
[3] https://www.slideshare.net/AlexanderJBuono/darden-resturants-policy-final-report (last accessed August 29, 2017).
[4] https://www.ftc.gov/news-events/press-releases/2016/01/ftc-announces-significant-enhancements-identitytheftgov (last accessed August 29, 2017).

14. "[I]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it…the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014).

15. Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

16. One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

17. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

(the "Receipt Provision").

18. After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

19. The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their

accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ."[5] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

20.     Card-issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[6]

21.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[7]

22.     Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number. Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

---

[5] Source: http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html (last accessed: August 29, 2017).
[6] *Rules for Visa Merchants Card Acceptance and Chargeback Management Guidelines*, VISA available at http://www.runtogold.com/images/rules_for_visa_merchants.pdf (last accessed: August 29, 2017).
[7] Source: https://www.govtrack.us/congress/bills/110/hr4008/text (last accessed: August 29, 2017).

23. In the interim, card-processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

24. As noted above, the processing companies have required that credit card or debit card expiration dates not be shown since 2003 and still require it. For example, American Express requires:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

25. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

26. According to data from the Federal Trade Commission's 2014 Consumer Sentinel Network report, the Miami-Fort Lauderdale-West Palm Beach ranks number one for identity theft-related consumer complaints, with 316.2 complaints per 100,000 people. That's 50% percent more than Seattle-Tacoma-Bellevue, which ranks a distant second. Also, six of the top twelve metropolitan areas for identity theft are in Florida, according to the report.[8]

27. So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (http://www.annualcreditreport.com) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

### DEFENDANT'S PRIOR KNOWLEDGE OF FACTA

28. Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with FACTA by consistently verifying their card machines and devices comply with the truncation requirement. Defendant could have readily done the same.

29. Defendant cannot deny prior knowledge of FACTA, having been sued for the identical violation alleged herein, on or about 2007, in the Northern District of Illinois. *See Dudzienski v. Darden Restaurants, Inc.*, No. 07-cv-03911 (N.D. Ill. Filed Jul. 11, 2007). As such, Defendant demonstrates that without appropriate injunctive relief ordered by the Court, it will continue to violate the rights of consumers. They have indeed once again violated FACTA even after having been sued once before in federal court.

---

[8] *Consumer Sentinel Network Data Book*, FTC (Feb. 2015), available at https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2014/sentinel-cy2014-1.pdf.

30. Defendant's Annual Report also states:

> We are subject to laws relating to information security, privacy, cashless payments and consumer credit, protection and fraud. An increasing number of governments and industry groups worldwide have established data privacy laws and standards for the protection of personal information, including social security numbers, financial information (including credit card numbers), and health information.

Darden Restaurants, Inc., Annual Report (Form 10-K) (2017).

31. Not only was Defendant so informed not to print the expiration date of credit or debit cards, it was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

### PLAINTIFFS' FACTUAL ALLEGATIONS

32. On or about March 4, 2017, Plaintiff Saleh made a purchase from one of Darden's restaurants located in Broward County, Florida.

33. On or about January 5, 2017, February 21, February 27, April 17, and April 24, 2017, Plaintiff Stevens made a purchase from one of Darden's restaurants located in Broward County, Florida.

34. Both Plaintiffs are usual customers of Darden's restaurants and, over the years, have visited the restaurants innumerable times and made multiple purchases.

35. Relevant to this action, both Plaintiffs paid for the subject goods using their own personal credit or debit card, and upon information and belief, both were presented with electronically printed receipts which revealed the expiration date of their card's account number.

36. In addition to bearing the expiration date of the card account number, the receipts identify whether the subject method of payment is a debit card (as opposed to a credit card).

37. Plaintiff Saleh noticed that the receipts showed the expiration date of his credit card. Concerned that his personal information could be seen and used for improper purposes, Plaintiff Saleh took further steps to put the receipt in a safe place and contacted counsel with regard to the risk of identity theft he had been exposed to.

38. Plaintiff Stevens, on the other hand, discarded the receipts he received at Darden restaurants which bore the expiration date of his debit card along with other information, and therefore became exposed to a particularly high risk of identity theft. [9]

39. The receipts Defendant printed bearing the expiration date of Plaintiffs' cards, caused both Plaintiffs to suffer a heightened risk of identity theft, exposing Plaintiffs' private information to those of Defendant's employees who handled the receipt and forced Plaintiff Saleh to take action to secure the receipts (an action which he otherwise would not have had to take). With near certainty, the server who generated the receipts and provided them to Plaintiffs saw the receipt and the personal information they contained.

40. Defendant's action have caused Plaintiffs a concrete injury in the form of: an increased risk of identity theft as identified by Congress; invasion of his substantive rights that has a close relationship to the harm caused by the common law tort of invasion of privacy; and

---

[9] "The epidemic of identity theft is growing because sensitive, personal information is acquired very easily, and the issuers of credit are often less than careful in verifying and authenticating the true identity of the applicant. There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, **dumpster-diving**, lost or stolen wallets, shoulder surfing, burglary, friends, relatives (only about 9 percent), **unscrupulous employees**, phone fraud, Internet fraud (phishing and pharming), spyware, hackers, unprotected wireless networks, unethical use of public documents that contain personal information, needless display of the Social Security numbers on government documents (such as; military and Medicare identification cards); the transfer sale and sharing of Social Security numbers and other data among financial institutions, credit reporting agencies and data brokers." Identity Theft and Data Broker Services: S. Hrg. 109-1087 Before the Committee on Commerce, Science, and Transportation, 109th Cong. Sess. 1 (May 10, 2005) (emphasis added).

lost time verifying the absence of the credit inaccuracies. *See Pedro v. Equifax, Inc.*, No. 16-13404, 2017 WL 3623926, at *3 (11th Cir. Aug. 24, 2017).

41. Researchers showed that a person coming in possess of the violative receipts Darden restaurants printed could hack the credit card account in few seconds through guessing and testing hundreds of permutations of expiration dates and CVV numbers on hundreds of sites.[10]

42. After receiving the first violative receipt at one of Darden's restaurants, Plaintiff Saleh visited other Darden restaurant locations to investigate the extent of Defendant's violations, and found that at least nine other restaurants were printing receipts in violation of FACTA's truncation requirement.

43. At the time, Plaintiff Saleh was keenly aware of the truncation requirement of FACTA because he is currently involved in a separate action against another defendant for violations of FACTA.[11]

44. Both Plaintiffs regularly dine at Darden's restaurants, and both intend to return to Darden's restaurants in the future.[12]

45. Due to 1) the injury Defendant's willful action already caused to Plaintiffs and the putative class members in violation of their rights under FACTA, 2) the reasonable inference that

---

[10] https://techcrunch.com/2016/12/05/a-new-tool-can-crack-a-credit-card-number-in-six-seconds/.

[11] The action is currently pending before the Southern District of Florida.

[12] The Ninth Circuit Court of Appeals recently held that a consumer who brings a false advertising claim may establish Article III standing based on allegations of her inability to rely on the advertising in the future. *Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2017 WL 4700093, at *10 (9th Cir. Oct. 20, 2017) ("We therefore hold that Davidson's allegation that she has "no way of determining whether the representation 'flushable' is in fact true" when she "regularly visits stores ... where Defendants' 'flushable' wipes are sold" constitutes a "threatened injury [that is] certainly impending," thereby establishing Article III standing to assert a claim for injunctive relief.").

Defendant will continue in the future to violate the federal law since it incurred for the second time already in a FACTA violation, and 3) the reasonable inference, based on past frequency of visits, that Plaintiffs, will return to Darden restaurants in the future, Plaintiffs have standing to pursue a claim for injunctive relief. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008).

46.     In addition, due to Defendant's failure to comply with the FACTA's requirements and the violation of Plaintiffs' private rights that followed, Plaintiffs are deterred from visiting Darden's restaurants in the future although that they would have otherwise frequented those restaurants on a normal basis. Accordingly, Plaintiffs have standing to pursue a claim for injunctive relief. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).

47.     A plaintiff need not "await the consummation of threatened injury to obtain prospective relief." Farmer v. Brennan, 511 U.S. 825, 845, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).

### DEFENDANT'S MISDEEDS

48.     At all times relevant herein, Defendant was acting by and though its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

49.     At all times relevant herein, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was in willful, knowing, or reckless disregard for federal law and the rights of the Plaintiffs.

50.     It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – e.g.., upon receipt of credit card payment.

51. Because Defendant prints the full expiration date on the credit card receipt, any person, including a would-be identity thief, can readily discern whether the card is still active and valid, thereby allowing identity thieves to narrow their focus to the more "viable" targets.

52. Notwithstanding the fact that it has extensive knowledge of the requirements of FACTA, as well as the dangers imposed upon consumers through its failure to comply, Defendant issued FACTA violative receipts at many of its restaurants, including, but not limited to, Olive Garden®, LongHorn Steakhouse®, and Bahama Breeze®.

53. By shirking the requirements of a federal privacy statute (i.e., not complying with the Receipt Provision), Defendant has caused consumers actual harm, not only because consumers were uniformly burdened with an elevated risk of identity theft, but because a portion of the sale from credit or debit card transaction is intended to protect consumer data, including the masking of credit card or debit card expiration dates as required by both state and federal laws.

54. Defendant also invaded Plaintiffs' privacy by disclosing Plaintiffs' private information to those of Defendant's employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

55. To paraphrase the words of the Honorable Judge Posner, Defendant is engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)).

56. A company subject to the FCRA can be liable for willful violations of the FCRA within the meaning of §1681n if they show a "reckless disregard" for the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

## CLASS ACTION ALLEGATIONS

57. This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiffs propose the following class, defined as follows, subject to modification by the Court as required:

> *(i) All persons in the United States (ii) who, when making payment pursuant to a purchase at a Darden restaurant location (iii) made such payment using a credit or debit card (iv) and were provided with an electronically printed receipt (v) which displayed the expiration date of the credit or debit card (vi) within the two (2) years prior to the filing of the complaint.*

58. Both Plaintiffs fall within the class definition and are members of the class. Excluded from the class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiffs' attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

### CERTIFICATION UNDER EITHER RULE 23(B)(2) OR (B)(3) IS PROPER.

59. The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant.

60. Defendant operates around 1,530 restaurants throughout the United States, accepts credit cards and debit cards at each and, upon information and belief, prints receipts reflective of credit card or debit card transactions. Therefore, based upon Defendant's 2016 Form 10-K Report, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The class can be identified through Defendant's records or Defendant's agents' records.

61. There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

62. While all class members have experienced actual harm as previously explained herein, this suit opts only for statutory damages and injunctive relief on behalf of the class. It expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

63. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the class predominate over questions that may affect individual class members, including the following:

   a. Whether, within the two (2) years prior to the filing of this Complaint, Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer an electronically printed receipt which showed the expiration date of their credit or debit card;

   b. Whether Defendant's conduct was willful, knowing, or reckless;

   c. Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

   d. Whether Defendant should be enjoined from engaging in such conduct in the future.

64. As persons who patronized one of Defendant's restaurants and received a printed receipt containing the expiration date of their credit and debit cards, Plaintiffs are asserting claims that are typical of the proposed class. Plaintiffs will fairly and adequately represent and

protect the interests of the class, and Plaintiffs have no interests antagonistic to any member of the class.

65. The principal question is whether the Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant willfully, knowingly, or recklessly provided such electronically printed receipts, despite knowledge of the unlawful nature of such policy.

66. Plaintiffs and the members of the class have all suffered harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the class, along with countless future patrons of Defendant's many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will (as it has already shown) continue such illegal conduct. Because of the size of the individual class members' claims, few class members could afford to seek legal redress for the wrongs complained of herein.

67. Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

68. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

69. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)

70. 15 U.S.C. §1681c(g) states as follows:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

71. This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. § 1681c(g)(3).

72. Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

73. On or before the date on which this complaint was filed, Plaintiffs and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

74. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

75. Notwithstanding the three-year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; and having knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

76. By printing the expiration date of Plaintiffs' credit card number on Plaintiffs' transaction receipts, Defendant caused Plaintiffs to suffer a heightened risk of identity theft; exposed Plaintiffs' private information to those of Defendant's employees who handled the receipt and impermissibly burdened Plaintiffs with the need to take action to secure or destroy the receipts.

77. As a result of Defendant's willful violations of the FCRA, Plaintiffs and members of the class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiffs and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiffs Yazan Saleh and Ronald E. Stevens respectfully request that this Court enter judgment in their favor and the class, and against Defendant for:

a. An Order granting certification of the class;

b. Statutory damages;

c. Punitive damages;

d. Injunctive relief;

e. Attorneys' fees, litigation expenses and costs of suit; and

f. Such other and further relief as the Court deems proper under the circumstances.

### JURY DEMAND

Plaintiffs demand a trial by jury on all counts.

Dated: November 5, 2017

Respectfully submitted,

/s/ *Scott D. Owens*
Scott D. Owens, Esq. (FBN 597651)
Scott D. Owens, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

/s/ *Bret L. Lusskin*
Bret L. Lusskin, Esq. (FBN 28069)
Bret Lusskin, P.A.
20803 Biscayne Blvd., Ste. 302
Aventura, FL 33180
Tel: 954-454-5841
Fax: 954-454-5844
blusskin@lusskinlaw.com

/s/ *Keith J. Keogh*
Keith J. Keogh, Esq. (FBN 126335)
Keogh Law, Ltd.
55 W. Monroe, Ste. 3390
Chicago, IL 60603
Tel: 312-726-1092
Fax: 312-726-1093
keith@keoghlaw.com

/s/ *Jibrael S. Hindi*
Jibrael S. Hindi, Esq. (FBN 118259)
The Law Offices of Jibrael S. Hindi
110 SE 6th St., 17th Floor
Ft. Lauderdale, FL 33301
Tel: 954-907-1136
Fax: 844-542-7235
jibrael@jibraellaw.com