## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

YAZAN SALEH and RONALD E.  )
STEVENS, individually and as the  )
representatives of a class of similarly  )
situated persons,  )   Case No. 0:17-cv-62156
  )
　　　　　　　Plaintiff,  )   Hon. Judge William J. Zloch
  )
　　v.  )   **ORAL ARGUMENT REQUESTED**
  )
DARDEN RESTAURANTS, INC.,  )
  )
　　　　　　　Defendant.  )

## DARDEN RESTAURANTS, INC.'S MOTION TO DISMISS
## PURSUANT TO FRCP 12(B)(1) FOR LACK OF ARTICLE III STANDING
## WITH INCORPORATED MEMORANDUM OF LAW

Mark S. Eisen, Esq. (*pro hac vice* to be sought)
meisen@beneschlaw.com
**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**
333 West Wacker Drive, Suite 1900
Chicago, Illinois  60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192

Mark Schellhase, Esq.
mark.schellhase@gray-robinson.com
**GRAY ROBINSON**
Mizner Park Office Tower
225 N.E. Mizner Blvd., Suite 500
Boca Raton, Florida 33432
Telephone:  (561) 368-3808
Fax:  (561) 368-4008

*Counsel for Darden Restaurants, Inc.*

Darden Restaurants, Inc., by and through undersigned counsel, respectfully submits this Motion to Dismiss Pursuant to FRCP 12(b)(1) for Lack of Article III Standing and Incorporated Memorandum of Law.  Pursuant to Local Rule 7.1(b), Darden submits its request for a hearing on this matter.

## PRELIMINARY STATEMENT

Three months after voluntarily dismissing an identical Fair and Accurate Credit Transactions Act class action against Darden, Plaintiffs' counsel now files this nearly identical complaint, this time using the original plaintiff's boyfriend.  The first action—*Romero v. Darden Restaurants*, No. 17-cv-61098 (S.D. Fla. May 31, 2017)—was voluntarily dismissed because it was quickly proven that the plaintiff had never actually received a receipt in violation of FACTA. Plaintiffs' counsel's renewed effort fares no better than their first.[1]

Here, Plaintiffs' putative FACTA class action stems from precisely one allegation: Plaintiffs contend they received transaction receipts displaying their credit card expiration dates. On that basis alone, Plaintiffs seek $1,000 per receipt for themselves and all persons who received a receipt from Darden displaying an expiration date over the last two years.  Nowhere in Plaintiffs' Complaint, however, do they allege a concrete injury-in-fact, nor could they plausibly do so. Congress—and over two dozen courts throughout the country—conclusively determined that the mere presence of an expiration date on a receipt ***cannot as a matter of law*** cause an injury-in-fact. Furthermore, Plaintiffs' counsel recently conceded before the Eleventh Circuit that the failure to mask a card expiration date does not create a concrete injury as it has no impact on the risk of identity theft.  *See Price v. Godiva Chocolatier, Inc.*, No. 16-16486 (11th Cir. July 12, 2017).

---

[1]     Plaintiffs' counsel are no stranger to this Court.  This Court is presiding over at least one other of Plaintiffs' counsel's questionable FACTA class actions.  *See Flaum v. Buth Na-Bodhaige, Inc.*, No. 15-cv-62695 (S.D. Fla.).

Plaintiffs did not suffer identity theft and have no conceivable risk of identity theft, nor did Plaintiffs suffer any invasion of their privacy whatsoever.  Indeed, "Congress expressly observed that the inclusion of expiration dates did not raise a material risk of identity theft." *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 81 (2d Cir. 2017) (affirming dismissal of FACTA action for lack of standing).  Plaintiffs rely solely on the fact that they received receipts ostensibly in violation of FACTA to create standing.  There can be no doubt, in light of the Supreme Court's recent *Spokeo, Inc. v. Robins* decision, that a mere technical statutory violation does not result in an injury in fact sufficient to confer Article III standing.  *See* 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury ***even in the context of a statutory violation***.") (emphasis added).

Judge Scola recently joined the more-than-two-dozen other judges around the country and held that (yet another of Plaintiffs' counsel's) FACTA actions "present[] a *perfect example* of a procedural violation that may result in no harm," and thus dismissed the case for lack of standing. *Gesten v. Burger King Corp.*, No. 17-22541, 2017 WL 4326101, at *5 (S.D. Fla. Sept. 27, 2017). In dismissing *Gesten*, Judge Scola followed Congress's admonition that FACTA was intended to:

> [E]nsure that consumers suffering from any ***actual harm*** to their credit or identity are protected while simultaneously ***limiting abusive lawsuits*** that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

PL 110–241, June 3, 2008, 122 Stat 1565 (emphasis added).  This Court should join Judge Scola and the near uniform consensus among the federal courts and dismiss this hyper-technical, no-harm action for lack of Article III standing.  Indeed, this Court's recent published holding in *Stacy v. Dollar Tree Stores* is already directly in line with this consensus, and this Court should continue to adhere to it.  *See Stacy v. Dollar Tree Stores, Inc.*, -- F.3d --, 2017 WL 3531513, at *4 (S.D. Fla. Aug. 14, 2017) (dismissing FCRA action for lack of standing).

2

## BACKGROUND

### I.    PROCEDURAL HISTORY.

On May 31, 2017, Plaintiffs' counsel, through Rosie Romero, initiated a putative FACTA class action against Darden in the Southern District of Florida. *See* 17-cv-61098 (S.D. Fla.). Ms. Romero's complaint is virtually identical to the complaint here. *Compare* 17-cv-61098, DE 1 (attached hereto as Exhibit A) *with* 17-cv-62156, DE 1. The class definitions are literally identical.

Ms. Romero allegedly visited a Darden Restaurant on March 31, 2017 and, on "information and belief," received a receipt bearing her card's expiration date. *See* 17-cv-61098, DE 1 ¶ 30. Pursuant to Judge Cooke's order, Plaintiff was required to produce *all evidence* supporting her claim. *See id.*, DE 10. It turned out, no such evidence existed. *See id.*, DE 20. Having received proof that Plaintiff never received a receipt in violation of FACTA, Plaintiffs' counsel voluntarily dismissed the case on August 1, 2017—just two months after filing the case. *See id.*, DE 24.

### II.    PLAINTIFFS' ALLEGATIONS.

A mere three months after dismissing the *Romero* action, Plaintiffs' counsel filed the present case on behalf of Yazan Saleh and Ronald E. Stevens on November 5, 2017. (*See* DE 1.)[2] Mr. Stevens, as luck would have it, is Ms. Romero's significant other. Mr. Saleh, as the Complaint indicates, is "keenly aware" of FACTA, as he is currently suing a Miami strip club in a similar action. (*See* DE 1 ¶ 43); *see Saleh v. Miami Gardens Square One, Inc.*, 17-cv-20001 (S.D. Fla.).[3]

Plaintiffs both allege that they visited an unnamed Darden location in Broward County, Florida. (*See* DE 1 ¶¶ 32, 33.) Plaintiff Saleh claims that he visited a Darden location on March

---

[2]    Citations to "DE #" from this point forward will refer only to the instant case, unless otherwise specifically noted.

[3]    Incidentally, Plaintiffs' counsel (also counsel in *Miami Gardens*) were ordered by Judge Goodman to turn over what counsel called their "pre-suit investigation" of Miami Gardens—in other words, the receipts they themselves "gathered" at strip clubs. *See* No. 17-cv-20001, DE 93.

4, 2017, while Plaintiff Stevens visited a Darden location multiple times between January and April 2017. (*Id.*) Plaintiffs contend they received receipts bearing their cards' expiration dates. (*Id.* ¶ 35.) Plaintiff Saleh alleges that he "put the receipt in a safe place." (*Id.* ¶ 37.) Plaintiff Stevens alleges that he discarded his receipts. (*Id.* ¶ 38.) On the basis of these allegations, Plaintiffs assert a single claim under the FACTA and seek to represent all persons who received a receipt displaying an expiration date at a Darden location over the last two years. (*Id.* ¶ 57.)

Though Plaintiffs do not seek actual damages, they allege in conclusory fashion that they have suffered a concrete injury because: (i) the printing of an expiration date creates "a heightened risk of identity theft;" (ii) the Darden server that waited on Plaintiffs may have seen the receipt; and (iii) they "lost time verifying the absence of the credit inaccuracies." (*Id.* ¶¶ 39, 40.)

## DISCUSSION

### I.   LEGAL STANDARD.

#### A.   Federal Rule of Civil Procedure 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge the court's subject matter jurisdiction. *See, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). Rule 12(b)(1) requires dismissal "when the court lacks the statutory or constitutional power to adjudicate the case." *Big Five Prop., Inc. v. Certain Underwriters at Lloyd's, London*, No. 12-cv-23916, 2013 WL 12091814, at *3 (S.D. Fla. Feb. 27, 2013) (internal quotations & citation omitted). A 12(b)(1) challenge can be either facial or factual; facial attacks are "based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). The burden of establishing jurisdiction rests with the party asserting it. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.     Article III Standing.

Under Article III of the Constitution, federal courts are empowered only to hear "cases" and "controversies."  *See, e.g.*, *Stacy v. Dollar Tree Stores*, Inc., -- F. Supp. 3d --, 2017 WL 3531513, at *3 (S.D. Fla. Aug. 14, 2017) (Zloch, J.).  A fundamental element of the Article III threshold is the doctrine of standing.  *Id.*  In order to satisfy standing, the plaintiff bears the burden of establishing an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  Crucially, "[w]here, as here, a case is at the pleading stage, the plaintiff must clearly allege *facts* demonstrating each element" of the standing inquiry.  *Spokeo*, 136 S. Ct. at 1547 (emphasis added, internal citation & alteration omitted).

### II.     *SPOKEO* ELIMINATES STANDING FOR PURELY TECHNICAL STATUTORY VIOLATIONS ABSENT A CONCRETE AND PARTICULARIZED HARM.

On May 16, 2016, the United States Supreme Court issued its landmark decision in *Spokeo, Inc. v. Robins*, which involved a putative class action filed under the FCRA.  The class action was predicated on the allegation that Spokeo disseminated an inaccurate credit report.  The district court dismissed the case for lack of standing.  *Robins v. Spokeo, Inc.*, No. 10-05306, 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011).  The Ninth Circuit reversed, holding that a statutory violation *per se* conferred standing.  *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 414 (9th Cir. 2014).

The Supreme Court, however, vacated the Ninth Circuit's decision because it failed to consider whether the plaintiff alleged a concrete harm beyond a mere technical statutory violation.  *Spokeo*, 136 S. Ct. at 1548.  Specifically, the Court held that in order to have suffered an injury in fact, an injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* (internal quotations & citation omitted).  Elaborating on concreteness, the Court held that "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist."  *Id.*

5

While the Court noted that "concrete" is not synonymous with "tangible," it nonetheless held that a plaintiff ***does not*** "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.  The mere violation of a statute thus does not create an injury in fact because that violation "may result in no harm." *Id.* at 1549.  By way of example, the Court held:

> [E]ven if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.  In addition, not all inaccuracies cause harm or present any material risk of harm.  An example that comes readily to mind is an incorrect zip code.  It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1549-50.

This Court recently considered the effect of *Spokeo* in a FCRA case alleging a background check disclosure violation.  *Stacy*, 2017 WL 3531513.  Looking to *Spokeo*, this Court considered "whether non-compliance with the statutory procedure itself caused harm (or a material risk of harm) to a substantive interest the statute protects." *Id.* at *4.  Following a thorough analysis, this Court held a "violation of the FCRA's stand-alone document requirement does not automatically cause a concrete injury for purposes of Article III standing" and dismissed the case. *Id.* at *5.

### III.   A RECEIPT DISPLAYING AN EXPIRATION DATE CANNOT, WITHOUT MORE, CAUSE A CONCRETE INJURY-IN-FACT.

#### A.   Congress and the Clarification Act Require *Actual Harm*, Which Plaintiffs' Counsel Have Already Conceded.

In 2007, Congress passed the Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act") amendment to FACTA.  The impetus for the legislation was the wave of FACTA litigation flooding the country over receipts properly redacting the card number, but failing to redact the expiration date—the exact violation over which Plaintiffs are now suing. *See* Clarification Act, PL 110–241, June 3, 2008, 122 Stat 1565 ("Almost immediately after the

deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated."). Congress felt the suits so meritless that it waived the expiration date element of FACTA for receipts printed between December 4, 2004 and June 3, 2008. *Id.*

Congress made a number of essential findings in passing the Clarification Act, which speak volumes as to (i) whether inclusion of the expiration date can result in a concrete injury-in-fact and (ii) Congress's intentions in passing FACTA.

> (a) FINDINGS – The Congress finds as follows: . . .
>
> (4) Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.
>
> (5) None of these lawsuits contained an allegation of harm to any consumer's identity.
>
> (6) Experts in the field agree that ***proper truncation of the card number, by itself . . . regardless of the inclusion of the expiration date***, prevents a potential fraudster from perpetrating identity theft or credit card fraud.
>
> (7) Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits ***represents a significant burden*** on the hundreds of companies that have been sued and could well raise prices to consumers ***without corresponding consumer protection benefit***.
>
> (b) PURPOSE – The purpose of this Act is to ensure that consumers suffering from any ***actual harm to their credit or identity are protected*** while simultaneously ***limiting abusive lawsuits*** that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

*Id.* § 2(a) – (b) (emphasis added). A number of courts, including the Second Circuit, have held that this legislative history means exactly what it says: "Congress *did not* think that the inclusion of a credit card expiration date on a receipt increases the risk of material harm of identity theft." *Crupar-Weinmann*, 861 F.3d at 81 (emphasis in original).

Notably, Plaintiffs' counsel have already conceded before the Eleventh Circuit that the Clarification Act means unredacted expiration dates create no harm nor any material risk of harm. *See Price v. Godiva Chocolatier, Inc.*, No. 16-16486 (11th Cir. July 12, 2017) (attached hereto as Exhibit B). Specifically, in an attempt to avoid the impact of *Crupar-Weinmann* on their appeal (involving a receipt displaying the first six and last four of the card), Plaintiffs' counsel stated:

> *Cruper-Weinmann* dealt with a failure to truncate the card expiration date, whereas this case deals with a failure to truncate Plaintiff's account number. ***That difference is key*** because, when Congress passed the "Clarification Act" to FACTA, Congress recognized proper truncation of the account number is needed to prevent identity theft.

(Exhibit B, emphasis added.) Plaintiffs' counsel have thus admitted that an otherwise properly truncated receipt bearing an expiration date cannot increase the risk of identity theft.

**B.      Courts Throughout the Country Agree That an Expiration Date, Without More, Cannot Give Rise to Article III Standing.**

Following *Spokeo*, an overwhelming consensus has developed throughout the country that a receipt displaying an expiration date does not create a concrete, injury-in-fact. Indeed, the only Circuit courts to evaluate the issue have readily dismissed these cases for lack of standing. The Seventh Circuit was the first appellate court to reach this decision in *Meyers v. Nicolet Restaurant of De Pere*. *See* 843 F.3d 724 (7th Cir. 2016). In that case, the plaintiff alleged that he received a receipt at Nicolet Restaurant that, while otherwise properly redacted, displayed his card's expiration date. *Id.* at 725. On appeal of an order denying class certification, the Court first took up standing in light of *Spokeo* and the Clarification Act, and held:

> *Spokeo* compels the conclusion that Meyers' allegations are insufficient to satisfy the injury-in-fact requirement for Article III standing. The allegations demonstrate that Meyers did not suffer any harm because of Nicolet's printing of the expiration date on his receipt. Nor has the violation created any appreciable risk of harm. . . .

8

> Moreover, Congress has specifically declared that failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft. In the Credit and Debit Card Receipt Clarification Act of 2007, Congress made a finding of fact that "[e]xperts in the field agree that proper truncation of the card number, by itself as required by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. 110–241, § 2(a)(6). Congress was instead quite concerned with the abuse of FACTA lawsuits . . . . That is why Congress sought to limit FACTA lawsuits to consumers "*suffering from actual harm*." *Id.* § 2(b)

*Id.* at 727-28 (emphasis added).

A few months later, the Second Circuit followed suit. In *Cruper-Weinmann*, the Second Circuit evaluated an identical claim concerning a receipt obtained at a Manhattan restaurant including the card's expiration date. *See* 861 F.3d 76 (2d Cir. 2017). The Second Circuit, turning to *Spokeo*, the Clarification Act and the Seventh Circuit's *Meyers* decision held:

> Guided by unambiguous statutory language that a receipt with a credit card expiration date does not raise a material risk of identity theft, and finding that the bare procedural violation alleged by the plaintiff does not present a material risk of harm, we conclude that allegations in her amended complaint do not satisfy the injury-in-fact requirement necessary to establish Article III standing to bring suit.

*Id.* at 78; *see also id.* at 81-82 ("[I]t is hard to imagine how the expiration date's presence could have increased the risk that [plaintiff's] identity would be compromised.").

The District Courts throughout the country following this line of authority are legion, reaching a near-unanimous consensus that the failure to redact a receipt does not automatically satisfy Article III's strictures. A representative sample (of these dozen) decisions are below.

- *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017) (affirming dismissal of FACTA action for lack of standing).

- *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13-cv-7174, 2017 WL 5157466 (S.D.N.Y. Nov. 3, 2017) (dismissing FACTA action for lack of standing).

- *Brooks v. Hualalai Investors, LLC*, No. 17-cv-00364, DE 26 (D. Hawaii Oct. 30, 2017) (remanding FACTA action for lack of standing).

9

- *Gesten v. Burger King Corp.*, No. 17-22541-CIV, 2017 WL 4326101 (S.D. Fla. Sept. 27, 2017) (dismissing FACTA action for lack of standing).

- *Alvarado v. Univ. of Southern Cal.*, 2017 U.S. Dist. Lexis 155608 (C.D. Cal. Sept. 22, 2017) (remanding FACTA action lack of standing).

- *Stelmachers v. Verifone Systems, Inc.*, No. 14-cv-4912, 2017 WL. 3968871 (N.D. Cal. Sept. 7, 2017) (dismissing FACTA action for lack of standing).

- *Batra v. RLS Supermarkets LLC*, No. 16-cv-2874, 2017 WL 3421073 (N.D. Tex. Aug. 9, 2017) (dismissing FACTA action for lack of standing).

- *O'Shea v. P.C. Richard & Son, LLC*, No. 15-cv-9069, 2017 WL 3327602 (S.D.N.Y. Aug. 3, 2017) (dismissing FACTA action for lack of standing).

- *Lindner v. Roti Rests., LLC*, No. 17-cv-935, 2017 WL 3130755 (N.D. Ill. July 24, 2017) (remanding FACTA action for lack of standing).

- *Kamal v. J. Crew Grp.*, No. 15-cv-0190, 2017 WL 2587617 (D.N.J. June 14, 2017) (dismissing FACTA action for lack of standing).

- *Katz v. Donna Karan Int'l, Inc.*, No. 14-cv-740, 2017 WL 2191605 (S.D.N.Y. May 17, 2017) (dismissing FACTA action for lack of standing).

- *Llewellyn v. AZ Compassionate Care Inc.*, No. 16-cv-4181, 2017 WL 1437632 (D. Ariz. April 24, 2017) (dismissing FACTA action for lack of standing).

- *Weinstein v. Intermountain Healthcare, Inc.*, No. 16-cv-00280, 2017 WL 1233829 (D. Utah Apr. 3, 2017) (dismissing FACTA action for lack of standing).

- *Hendrick v. Aramark Corporation*, No. 16-cv-4069, 2017 WL 1397241 (E.D. Pa. April 18, 2017) (dismissing FACTA action for lack of standing).

- *Cruper–Weinmann v. Paris Baguette Am., Inc.*, No. 13-cv-7013 (JSR), 2017 WL 398657 (S.D.N.Y. Jan. 30, 2017) (dismissing FACTA action for lack of standing).

- *Thompson v. Rally House of Kansas City et al.*, No. 15-cv-00886, 2016 WL 8136658 (W.D. Mo. Oct. 6, 2016) (dismissing FACTA action for lack of standing).

There can be no question—in light of the clear legislative history, the decisions of all appellate courts to evaluate this issue and the above authority—that, as detailed below, Plaintiffs' Complaint should be dismissed for lack of standing.

**B.     Plaintiffs Did Not Suffer an Injury-in-Fact.**

Plaintiffs allegedly received receipts displaying their cards' expiration dates.  That is the sum total of the factual allegations in this case.  They did not suffer identity theft (they could not have), nor did they suffer an invasion of privacy.   Simply put, nothing happened to them.  Despite the consensus of authority on this issue, Plaintiffs contend they have suffered a concrete injury-in-fact on three bases, each of which is completely meritless.

*i.       Plaintiffs could not have suffered an increased risk of identity theft.*

<u>First</u>, Plaintiffs claim to have suffered an injury-in-fact on the basis that they allege "a heightened risk of identity theft . . . ."  (*See* DE 1 ¶¶ 39, 40.)  As the Second Circuit held evaluating this exact argument, Congress's findings here are "dispositive" of this issue—truncation of an expiration date has no impact on the risk of identity theft.  *Crupar-Weinmann*, 861 F.3d at 81.

As this Court recently noted, the relevant analysis in evaluating Article III standing under *Spokeo* is as follows:

> The key is to discern "whether the particular procedural violations . . . entail a degree of risk sufficient to meet the concreteness requirement."  Put differently, the question is whether non-compliance with the statutory procedure itself caused harm (or a material risk of harm) to a substantive interest the statute protects.

*Stacy*, 2017 WL 3531513, at *4 (Zloch, J.) (quoting *Spokeo*, 136 S. Ct. at 1550).  This is the exact same analysis the Second Circuit conducted in *Crupar-Weinmann*.  *See* 861 F.3d at 81 ("[T]he key inquiry here is whether Paris Baguette's alleged bare procedural violation—printing Crupar-Weinmann's credit card expiration date on her receipt—presents a material risk of harm to the underlying concrete interest Congress sought to protect in passing FACTA.").

Utilizing this Court's analysis, the expiration date on Plaintiffs' receipts *could not* have presented any material risk of identity theft whatsoever.  Ironically, Plaintiffs refer to "an increased

risk of identity theft as identified by Congress" as their support for the alleged harm.  (*See* DE 1 ¶ 40.)  As noted above, however, Congress specifically held that:

> Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, *regardless of the inclusion of the expiration date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud.

Clarification Act, 122 Stat 1565.  Unsurprisingly, the "vast majority of other district courts" have adopted the same view in dismissing expiration date cases for lack of standing.  *Batra*, 2017 WL 3421073, at *7; *see also id.* ("[T]his provision is not one in which a violation alone constitutes a concrete injury."); *O'Shea*, 2017 WL 3327602, at *6 ("*Crupar-Weinmann* II left no doubt that alleging that a card's expiration date was printed on a receipt, absent some other allegation that elevated the risk of identity theft or fraud to one that is material, is itself insufficient to establish an injury in fact that confers Article III standing."); *cf. Gesten*, 2017 WL 4326101, at *3 (S.D. Fla. Sept. 27, 2017) (dismissing a FACTA action, finding "the Seventh and Second Circuits, as well as multiple district courts, have held that under *Spokeo*, a plaintiff does not have standing to pursue a FACTA claim if the plaintiff has not suffered any actual harm or a material risk of harm.").

The legislative history and case law notwithstanding, Plaintiff Saleh could not have any risk of identity theft by virtue of the fact that he admittedly *kept his receipt*.  (*See* DE 1 ¶ 37.)  That he would allege any increased risk of identity theft resulting from the receipts *he has* (and no one else has ever seen) is frivolous.  *See, e.g.*, *Meyers*, 843 F.3d at 727 ("The allegations demonstrate that Meyers did not suffer any harm because of Nicolet's printing of the expiration date on his receipt.  Nor has the violation created any appreciable risk of harm.  After all, Meyers discovered the violation immediately and nobody else ever saw the non-compliant receipt."); *Stelmachers*, 2016 WL 6835084, at *4 ("Plaintiff alleges he, and no one else, received the receipt . . . .  Thus, unless a litany of speculative events come about, the risk that Plaintiff will be subjected to . . .

identity theft . . . is too attenuated to constitute a qualifying injury in fact . . . .").[4]

Likewise, Plaintiff Stevens is not at any increased risk of identity theft by virtue of having thrown his receipts away.  (DE 1 ¶ 38.)  As an initial matter, Congress conclusively determined that redacting the expiration date *has no impact* on the risk of identity theft.  *See* Clarification Act, 122 Stat 1565; *Crupar-Weinmann*, 861 F.3d at 81.  Discarding these receipts cannot magically increase the risk of identity theft where there was no such risk in the first place.  The only Court to evaluate this counsel-crafted attempt at creating standing rejected it on its face.[5]  *See Fullwood*, 2017 WL 5157466, at *5 ("Plaintiff's haphazard discarding of her earlier receipts . . . did not increase her risk of identity theft.").  This is all the more so in light of the fact that Plaintiff Stevens fails to allege (i) that any third party ever saw or could see his receipts or even (ii) that the receipt has some chance—however attenuated—to end up in the hands of a bad actor.  *See, e.g.*, *Kamal v. J. Crew Grp., Inc.*, No. 15-cv-0190, 2016 WL 6133827, at *3 (D.N.J. Oct. 20, 2016) ("Nor does the record indicate that anyone will actually obtain one of Plaintiff's discarded J. Crew receipts, and—through means left entirely to the Court's imagination—identify the remaining six digits of the card number and then proceed undetected to ransack Plaintiff's Discover account.").

Simply put, Plaintiffs do not have an increased risk of identity theft.  Their conclusory allegations to the contrary do not make it so.[6]

---

[4]   Plaintiff Saleh was plainly not concerned with risks of identity theft.  He allegedly—upon receiving a first receipt bearing his card's expiration date—went to other Darden restaurants for the sole purpose of obtaining receipts displaying his card's expiration date.  (*See* DE 1 ¶ 42.)

[5]   Indeed, Plaintiff Stevens' admission that he no longer has the receipts at issue raises the question as to how he knew he received receipts in violation of FACTA, and even more so how his counsel could have investigated the alleged violation.  This is, of course, the kind of conduct that resulted in the voluntary dismissal of Plaintiffs' counsel's *Romero* lawsuit.

[6]   It also bears noting that no fraud occurred in the nearly one year since Plaintiffs allegedly visited Darden restaurants, undermining any contention that there was any material risk of identity theft.  *See, e.g.*, *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 958 (D. Nev. 2015) ("[T]he passage

> ### ii.   *Plaintiffs did not suffer any invasion of privacy or any conceivable harm to their privacy interests.*

Second, Plaintiffs contend they have suffered a concrete injury because Darden's employees may have seen Plaintiffs' credit card information while *processing their credit card transactions.* (*See* DE 1 ¶ 39.) The sheer absurdity of this argument is apparent on its face. As Judge Scola recently noted, "disclosing" credit card information to Darden's employees "is no different than the 'disclosure' that happens any time a consumer uses a credit card to pay for a transaction. ***It is not the type of harm that Congress identified in enacting FACTA***." *Gesten*, 2017 WL 4326101, at *5 (emphasis added); *see also Stelmachers*, 2017 WL 3968871, at *5 ("Nor does the suggestion that Verifone may have exposed Plaintiff's credit card number to 'its staff and possibly others' alter the analysis. FACTA was not enacted to protect consumer's private information from credit card processors . . . ."); *Katz*, 2017 WL 2191605, at *6 (rejecting the notion of a privacy interest regarding store employees that handled the receipt).

Were this "disclosure" a concrete injury-in-fact, any consumer would have standing to sue simply by virtue of paying with a credit card, regardless of what the receipt subsequently displayed. A credit card transaction, of course, cannot be completed without consumers (like Plaintiffs) providing their card for payment; such an act is by no means a "disclosure" of private information in any relevant sense. *See, e.g.*, *Kamal*, 2017 WL 2443062, at *3 ("For one, J. Crew did not 'disclose' Kamal's personal information. Rather, Kamal gave his credit-card number to J. Crew, which then printed a receipt containing part of that number and handed it back to Kamal."). In any event, if the provision of a credit card to a store or restaurant could be deemed a "disclosure" of personal information, the disclosing party would be Plaintiffs themselves.

---

of time without a single report from Plaintiffs that they in fact suffered the harm they fear must mean something."). Plaintiffs admit that no credit card fraud occurred. (*See* DE 1 ¶ 40.)

Plaintiffs also contend the display of the expiration date creates some amorphous privacy violation "that has a close relationship to the harm caused by the common law tort of invasion of privacy." (DE 1 ¶ 40.) Reference to generic privacy rights do nothing to state a cognizable injury. *See Kamal*, 2016 WL 6133827, at *4 ("While FACTA as a whole may implicate traditional privacy interests, Plaintiff's alleged injury does not."); *Llewellyn*, 2017 WL 1437632, at *6 ("[D]istrict courts have repeatedly held that an allegation that a receipt contained credit card information in violation of FACTA, without more, does not implicate traditional privacy interests."); *Katz*, 2017 WL 2191605, at *6 ("Plaintiff does not establish that Congress intended to create for credit card holders a privacy right in their information required to be redacted or truncated from receipts.").

Plaintiffs do not allege an actual disclosure of personal or private information to a single third party. Here, there is not a single allegation that any third party—apart from Darden staff, who processed the transactions—has ever seen or will ever see Plaintiffs' information. This is especially true for Plaintiff Saleh, who allegedly has his receipt, but equally true for Plaintiff Stevens, who allegedly discarded them. *See, e.g.*, *Kamal*, 2017 WL 2191605, at *3 (distinguishing a FACTA violation from a data breach case, finding "Plaintiff's personal information was not disclosed to third parties or used to perpetrate credit-card or tax fraud."); *Fullwood*, 2017 WL 5157466, at *5 ("Plaintiff never alleges that Defendants made her receipts accessible to the public in any way, nor does she claim to have been the victim of identity theft or to have had her credit card used fraudulently. She simply claims that discarding the receipts without destroying them 'expos[ed] her to identity thieves.'").

The abstract—and unsupported—nature of Plaintiffs' alleged harm to their privacy is readily apparent from their Complaint itself. Instead of alleging a single fact to support the notion that Darden disclosed Plaintiffs' credit card information to third parties, Plaintiffs make a generic

reference (in a footnote) to the concept of dumpster-diving. (*See* DE 1 ¶ 38 n.9.) Such "highly speculative" allegations are insufficient to allege an actual disclosure of private information. *See Kamal*, 2017 WL 2587617, at *5 ("Unsurprisingly, Plaintiff cites no specific examples of this actually occurring."). Furthermore, that Plaintiff Saleh intentionally visited Darden restaurants for the purpose of obtaining receipts bearing his expiration date, (DE 1 ¶ 42) establishes that he has no legitimate privacy concern in the first instance. *See id.* at *3 n.4 ("As an aside, the Court notes that Kamal continued to purchase from J. Crew even after sustaining his first alleged 'injury.'").

### iii. *Plaintiffs cannot create standing by engaging in entirely unnecessary prophylactic measures to protect against hypothetical future harm.*

Third, and a last-ditch effort to manufacture standing, Plaintiffs both claim that they "lost time verifying the ***absence*** of the credit inaccuracies." (DE 1 ¶ 40, emphasis added.). Additionally, Plaintiff Saleh contends he "took further steps to put the receipt in a safe place" (which undermines any possible need to invest time doing anything). (*Id.* ¶ 37.) *Spokeo* notwithstanding, these alleged injuries-in-fact fall well short of the analysis and requirements set forth by the Supreme Court in *Clapper*.

In *Clapper*, the Supreme Court evaluated whether respondents had standing to challenge the Foreign Intelligence Surveillance Act based on "the objectively reasonable likelihood that their communications will be acquired under" FISA in the future. *See* 133 S. Ct. 1138, 1142 (2013). The Supreme Court held that "'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." *Id.* at 1147 (internal citations omitted). It is well settled, following *Clapper*, that prophylactic actions to protect one's identity *are not* an injury-in-fact unless those actions were taken to ameliorate *certainly impending* future injury. *See id.* at 1152 ("Because respondents do not face a threat of certainly impending

interception under § 1881a, the costs that they have incurred to avoid surveillance are simply the product of their fear of surveillance, and . . . such a fear is insufficient to create standing.").

Here, Plaintiffs fail entirely to allege any facts to support the notion of a certainly impending future injury that would justify the actions they allegedly took. As noted above, there is no risk that receipts displaying an expiration date—even if discarded—could give rise to a material risk of (let alone actual) identity theft. *See Crupar-Weinmann*, 861 F.3d at 81 (finding, as a matter of law, that displaying expiration date alone is not a concrete injury). There is thus no reason to have "guarded" his receipt, as Plaintiff Saleh did, even assuming such an action could create standing in any event. There is also no reason for Plaintiffs to have invested time monitoring for *the absence* of fraud—no fraud could have resulted from an expiration date, let alone where there was no reason to believe any third party ever saw or will see it. As the Supreme Court put it, allowing these actions to create standing would enable "an enterprising plaintiff . . . to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Clapper*, 133 S. Ct. at 1151. No risk of harm was certainly impending, and there was thus no reason to undertake actions to guard receipts or monitor for fraud (which never happened).[7]

*          *          *

At the end of the day, Plaintiffs attempt to create an injury-in-fact from, at most, a technical violation of a statute. This purported violation resulted in no risk, let alone a material risk, of identity theft or credit card fraud. This "presents a perfect example of a procedural violation" that results in no harm and thus cannot confer standing. *Gesten*, 2017 WL 4326101, at *5.

---

[7]       Plaintiffs' citation to *Pedro v. Equifax* is misleading at best. (*See* DE 1 ¶ 40.) In *Pedro*, the plaintiff alleged that she spent time attempting to resolve credit inaccuracies that were *published to third parties* and resulted in a *100 point drop* in her credit score. *See* 868 F.3d 1275, 1280 (11th Cir. 2017). Here, Plaintiffs allege they monitored for fraud that never did—and never could—occur from information that was never seen by a third party.

C.    **The District Courts in this District Finding Standing in FACTA Cases Are Contrary to *Spokeo* Itself and the Manifest Weight of Judicial Authority.**

In opposition to this motion, Plaintiffs will undoubtedly point to the fact that three judges in this District—three of only five judges in the country—have found standing in FACTA cases post-*Spokeo*. These decisions, respectfully, are predicated on a misinterpretation of *Spokeo* and outdated and superseded authority, and have been met with widespread criticism.

As an initial matter, the cases to which Plaintiffs will cite (all filed by their counsel) boil down to just one decision. Three judges have collectively issued five decisions finding standing in the FACTA context post-*Spokeo*. *See Guarisma v. Microsoft Corporation*, 209 F. Supp. 3d 1261 (S.D. Fla. 2016); *Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332 (S.D. Fla. 2016); *Bouton v. Ocean Properties, Ltd.*, 201 F. Supp. 3d 1341 (S.D. Fla. 2016); *Flaum v. Doctor's Associates, Inc.*, 204 F. Supp. 3d 1337 (S.D. Fla. 2016); *Guarisma v. Hyatt Equities, LLC*, No. 17-cv-20931, DE 50 (S.D. Fla. Sept. 28, 2017). Each of these decisions trace back to just one—the *Microsoft* decision, which is cited liberally (or block-quoted) throughout—and then rely heavily on each of the others. *See Wood*, 201 F. Supp. 3d at 1337-40; *Bouton*, 201 F. Supp. 3d at 1351-52; *Flaum*, 204 F. Supp. 3d at 1339-42. Five decisions thus collapse quickly into a single decision.

As a more fundamental matter, each decision is directly contrary to the Supreme Court's *Spokeo* decision. The above decisions rely on the argument that a concrete injury results under FACTA "as soon as a company prints the offending receipt . . . ." *Guarisma*, 209 F. Supp. 3d at 1266; *see also Wood*, 201 F. Supp. 3d at 1338. As Judge Scola noted, this conclusion "is contrary to the holding of *Spokeo*." *Gesten*, 2017 WL 4326101, at *4. In *Spokeo*, the Court specifically held that "Congress' role in identifying and elevating intangible harms ***does not mean*** that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S.

Ct. at 1549.  Indeed, Judge Scola's opinion fits in directly with the analysis conducted by this Court in *Stacy*.  *See Stacy*, 2017 WL 3531513, at *5 (finding a violation of a procedural FCRA requirement "does not automatically cause a concrete injury for purposes of Article III standing.")

Finally, this Court should follow its view articulated in *Stacy*, as the decisions above rely on outdated and superseded precedent.  As Judge Scola found, "[e]ach of these opinions either relied on *Guarisma v. Microsoft*, which in turn relied on *Hammer v. Sam's East, Inc*., an Eighth Circuit opinion decided before *Spokeo*, or relied directly on *Hammer*."  *Gesten*, 2017 WL 4326101, at *3.  The significance—and error—of relying on *Hammer* (which held that a violation of FACTA alone provides standing) is clear: *Hammer* has been superseded by *Spokeo* and the Eighth Circuit's decision in *Braitberg v. Charter Communications*.  *See* 836 F.3d 925, 930 (8th Cir. 2016).  In light of *Spokeo* and *Braitberg*, even courts within the Eighth Circuit have dismissed FACTA cases for lack of standing.  *See, e.g.*, *Thompson*, 2016 WL 8136658, at *5 (dismissing FACTA action).

The *Microsoft* decision and its progeny also rely on the *Amason v. Kangaroo Express* decision, a Northern District of Alabama ruling that preceded *Spokeo* by three years.  The *Amason* decision adopts an absolutist view that the violation of FACTA, alone, is a concrete injury-in-fact.  *See* No. 09-cv-2117, 2013 WL 987935, at *4 (N.D. Ala. Mar. 11, 2013).  This view cannot be considered persuasive in light of *Spokeo*, and is a view this Court has specifically rejected outright.  *See Stacy*, 2017 WL 3531513, at *4 (relying on *In re Michaels Stores, Inc.*, No. 15-2547, 2017 WL 354023, at *6 (D. N.J. Jan. 24, 2017), which found the *Amason* decision to be unpersuasive).

As a result, Judge Scola and numerous other courts throughout the country have declined to follow the *Microsoft* line of cases.  *See, e.g.*, *Thompson*, 2016 WL 8136658, at *5; *Batra*, 2017 WL 3421073, at *5 n.4; *Llewellyn*, 2017 WL 1437632, at *3; *Cruper-Weinmann*, 235 F. Supp. 3d at 576.  This Court should adhere to its view in *Stacy* and similarly decline to follow *Microsoft*.

## IV.     PLAINTIFFS LIKEWISE LACK STANDING TO SEEK INJUNCTIVE RELIEF.

As a final matter, Plaintiffs' contention that they have standing to seek injunctive relief is meritless.  (DE 1 ¶ 46.)  Even if Plaintiffs had standing to seek damages—they do not—they lack standing to pursue injunctive relief because they have failed to allege "any real or immediate threat that [they] will be wronged again."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiffs' Complaint is missing one key allegation on this front: that Darden is *still* issuing receipts purportedly in violation of FACTA.  Assuming, *arguendo*, Plaintiffs received receipts in violation of FACTA they do not allege Darden is still issuing violative receipts (it is not).  Plaintiffs thus cannot allege they "face a real or immediate threat of future injury."  *Marty v. Anheuser-Busch Companies*, 43 F. Supp. 3d 1333, 1359 (S.D. Fla. 2014).  It is unsurprising Plaintiffs' claim for injunctive relief is predicated solely on *past* occurrences—receipts already issued and a case filed against Darden *ten years ago*.  (DE 1 ¶¶ 29, 45, 46.)  Injunctive relief, however, "regulate[s] future conduct," and thus standing to seek such relief requires "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury."  *Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001).  At most, Plaintiffs' concerns of future injury are purely hypothetical.

Further, Plaintiffs' allegation that they are deterred from visiting Darden restaurants in the future is contravened by their very own allegations.  Plaintiff Stevens has gone to Darden restaurants no fewer than four times *after* receiving his first receipt.  (*See* DE 1 ¶ 33.)  Plaintiff Saleh visited at least nine additional locations after receiving his receipt.  (*See id.* ¶ 42.)  Plaintiffs' pursuit of injunctive relief is thus not only unsupported, but entirely disingenuous.

## <u>CONCLUSION</u>

For the foregoing reasons, Darden respectfully requests this Court to: (i) dismiss this action pursuant to FRCP 12(b)(1); and (ii) award all such other relief deemed equitable and just.

20

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Darden respectfully requests oral argument on this motion.  As detailed above, the motion raises issues pertaining to subject matter jurisdiction in light of recent Supreme Court authority.  Oral argument will help this Court evaluate these novel and complex issues of law.

Darden anticipates that this hearing would last approximately one hour.

**DATED:** November 28, 2017               Respectfully submitted

                                          /s/ Mark Schellhase

                                          Mark S. Eisen, Esq. (*pro hac vice to be filed*)
                                          meisen@beneschlaw.com
                                          **BENESCH, FRIEDLANDER,**
                                          **COPLAN & ARONOFF LLP**
                                          333 West Wacker Drive, Suite 1900
                                          Chicago, Illinois  60606
                                          Telephone:  (312) 212-4949
                                          Facsimile:  (312) 767-9192

                                          Mark Schellhase, Esq.
                                          mark.schellhase@gray-robinson.com
                                          **GRAY ROBINSON**
                                          Mizner Park Office Tower
                                          225 N.E. Mizner Blvd., Suite 500
                                          Boca Raton, Florida 33432
                                          Telephone:  (561) 368-3808
                                          Fax:  (561) 368-4008

                                          *Counsel for Darden Restaurants, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **DARDEN RESTAURANTS, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(1) FOR LACK OF ARTICLE III STANDING WITH INCORPORATED MEMORANDUM OF LAW** was served upon all interested parties using this Court's ECF filing system this 28th day of November, 2017.

/s/ Mark Schellhase