IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

YAZAN SALEH and RONALD E. )
STEVENS, individually and as the )
representatives of a class of similarly )
situated persons, )
    ) Case No. 0:17-cv-62156
    )
    Plaintiff, ) Hon. Judge William J. Zloch
    )
v. ) **ORAL ARGUMENT REQUESTED**
    )
DARDEN RESTAURANTS, INC., )
    )
    Defendant. )

**DARDEN RESTAURANTS, INC.'S
REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1) FOR LACK OF ARTICLE III STANDING**

> Mark S. Eisen, Esq. (admitted *pro hac vice*)
> meisen@beneschlaw.com
> **BENESCH, FRIEDLANDER,
> COPLAN & ARONOFF LLP**
> 333 West Wacker Drive, Suite 1900
> Chicago, Illinois 60606
> Telephone: (312) 212-4949
> Facsimile: (312) 767-9192
>
> Mark Schellhase, Esq.
> mark.schellhase@gray-robinson.com
> **GRAY ROBINSON**
> Mizner Park Office Tower
> 225 N.E. Mizner Blvd., Suite 500
> Boca Raton, Florida 33432
> Telephone: (561) 368-3808
> Fax: (561) 368-4008
>
> *Counsel for Darden Restaurants, Inc.*

Plaintiffs did not suffer any harm or risk of harm to the substantive interest FACTA furthers—the prevention of identity theft—simply by receiving a receipt with an expiration date. And, their arguments in opposition do not change this fact.  <u>First</u>, Plaintiffs assert that FACTA violations *per se* give rise to standing the instant a receipt is printed.  This position does not survive the Supreme Court's recent holding in *Spokeo*, which holds that "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. 1540, 1549 (2016).

In an effort to argue around *Spokeo*, Plaintiffs equate FACTA's expiration date redaction requirement with a substantive right to be free from identity theft.  This Court, however, has rejected such attempts to transform every procedural provision into a substantive interest.  *Stacy v. Dollar Tree Stores, Inc.*, -- F. Supp. 3d --, 2017 WL 3531513, at *5 (S.D. Fla. Aug. 14, 2017) (Zloch, J.) ("Simply put, the means and ends [of FCRA's stand-alone document requirement] are not 'perfectly correlated,' . . . ."). Likewise, here, the means—redacting credit card expiration dates—and the ends—preventing identity theft—are not perfectly correlated.  Congress already made this exact determination in finding that displaying an expiration date creates no risk of harm whatsoever.  *See* Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), PL 110–241, June 3, 2008, 122 Stat 1565Clarification Act, 122 Stat 1565 ("[*P*]*roper truncation of the card number, by itself . . . regardless of the inclusion of the expiration date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud.") (emphasis added).

<u>Second</u>, Plaintiffs try to assert standing by focusing on cases involving *actual* disclosure of private information to third parties and *actual* discrimination.  No disclosure of information to a third party occurred here.  Plaintiffs do not identify a single third party that ever saw their credit card expiration date, nor do they articulate a basis to believe one ever will.  Alluding to the fact that Darden's restaurant staff saw Plaintiffs' credit card information is irrelevant.  As Judge Scola

held, "this 'disclosure' is no different than the 'disclosure' that happens any time a consumer uses a credit card to pay for a transaction." *Gesten*, 2017 WL 4326101, at *5. Plaintiffs' reliance on so-called tester cases involving *actual* discrimination, like *Havens Realty Corp. v. Coleman*, is similarly unpersuasive. Plaintiffs did not suffer *actual* identity theft (or any other harm).

Third, and finally, it is axiomatic that Plaintiffs cannot manufacture standing "based on a nonparanoid fear" of identity theft. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013). Plaintiffs cannot take prophylactic actions, like monitoring credit, to create standing where Congress already determined that an expiration date creates exactly zero risk of harm.

None of Plaintiffs' legal arguments change the inescapable fact that the display of expiration dates on Plaintiffs' receipts did not "cause[] harm (or a material risk of harm) to a substantive interest the statute protects." *Stacy*, 2017 WL 3531513, at *4. The overwhelming majority of courts (and the only appellate courts) to consider this issue post-*Spokeo* have held that no injury nor risk of injury befell Plaintiffs. *See, e.g.*, *Gesten v. Burger King*, No. 17-22541, 2017 WL 4326101, at *3 (S.D. Fla. Sept. 27, 2017). The Complaint should be dismissed.[1]

## I. VIOLATION OF FACTA'S PROCEDURAL REQUIREMENTS DO NOT GIVE RISE TO ARTICLE III STANDING.

Plaintiffs contend that (i) FACTA's expiration date requirement confers a substantive right and (ii) violation of that right *per se* constitutes an injury-in-fact. (*See* DE 14 at 8-13.) Plaintiffs are incorrect on both points; the display of an expiration date is a purely procedural violation, which Congress has already determined does not create a material risk of harm.

---

[1] It should not go unnoticed that Plaintiff Stevens has admitted that he "did not notice" whether the receipts he received contained his credit card expiration date. (*See* DE 14 at 2.) Plaintiff Stevens has provided no basis to believe that he has a colorable FACTA claim. This is the exact conduct that resulted in Plaintiffs' counsel voluntarily dismissing their prior FACTA action against Darden (brought by Mr. Stevens' girlfriend), where the plaintiff likewise admitted she had no idea if she ever received a violative receipt (and, in fact, she did not). (DE 14 at 2 n.3.)

A.   **FACTA's Redaction Requirements Do Not *Per Se* Give Rise to Standing.**

As a preliminary matter, *Spokeo* does not merely "reiterate[] long-established principles," as Plaintiffs argue. (*See* DE 14 at 3.) To the contrary, *Spokeo* "clarified the standing requirements implicated in lawsuits where plaintiffs are afforded statutory damages for violations of federal statutes." *Gesten*, 2017 WL 4326101, at *2. *Spokeo*'s clarification is particularly pertinent here, as it is now unambiguously clear that:

> Congress' role in identifying and elevating intangible harms *does not mean* that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. . . . Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

136 S. Ct. at 1549 (emphasis supplied). Plaintiffs' *per se* view—that they met Article III the instant their receipts were printed—is belied by controlling Supreme Court authority. (*See* DE 14 at 8.)[2]

Plaintiffs' contention that they have a "substantive right" to a redacted receipt, the violation of which *per se* gives rise to standing is likewise unavailing. (*See id.*) Plaintiffs' characterization of FACTA's technical requirements as "substantive" runs contrary to the Court's analysis in *Stacy*. In evaluating standing to assert a claim concerning FCRA's standalone disclosure requirement, this Court stated "the question is whether non-compliance with the statutory procedure itself caused harm (or a material risk of harm) to a substantive interest the statute protects." *Stacy*, 2017 WL 3531513, at *4. Recognizing first the substantive interest at issue—ensuring employees give "knowing consent to the procurement of a consumer report"—the Court then found the standalone

---

[2]   This is the case regardless of whether FACTA's requirements are deemed substantive or procedural. *See, e.g.*, *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016) ("Whether the right is characterized as 'substantive' or 'procedural,' its violation must be accompanied by an injury-in-fact. . . . That is one of the lessons of *Spokeo*."); *Llewellyn v. AZ Compassionate Care*, No. 16-04181, 2017 WL 1437632, at *3 (D. Ariz. Apr. 24, 2017) (same).

3

requirement simply a means to accomplish this ends. *Id.* Accordingly, this Court concluded that non-compliance "does not automatically impinge the" substantive interests. *Id.* at *5.

This case comes within this Court's analysis in *Stacy*. FACTA was unquestionably enacted to protect the substantive interest to be free from identity theft and credit card fraud. *See, e.g.*, Clarification Act, 122 Stat 1565 ("[T]he purposes of [FACTA] is to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud."); *Gesten*, 2017 WL 4326101, at *2 (noting FACTA was enacted to combat identity theft); *Batra v. RLS Supermarkets LLC*, No. 16-cv-2874, 2017 WL 3421073, at *2 (N.D. Tex. Aug. 9, 2017) (same). FACTA's expiration date requirement is merely a tool (albeit, as Congress found, an unnecessary one) to further this substantive interest. It is not, however, a substantive interest in and of itself. *See, e.g.*, *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 81 (2d Cir. 2017) (finding that FACTA's expiration date requirement is procedural).

According to Plaintiffs, no part of FACTA is procedural—each provision is independently a substantive interest automatically creating an injury-in-fact. (*See* DE 14 at 8 n.7.) By Plaintiffs' logic, every statutory requirement would be substantive, the violation of which *per se* gives rise to standing—the exact contrary of *Spokeo*. Indeed, there is no material distinction between a failure under FCRA to provide required notice of information that "may be entirely accurate," *Spokeo*, 136 S. Ct. at 1550, and the display of an expiration date no one has seen and cannot result in harm.

Nearly every court to consider this argument has rejected it outright. By way of example, the Second Circuit in *Crupar-Weinmann* held that FACTA's expiration date requirement was procedural and then conducted the exact analysis used by this Court in *Stacy*:

> [T[he key inquiry here is whether Paris Baguette's *alleged bare procedural violation*—printing Crupar-Weinmann's credit card expiration date on her receipt—presents a material risk of harm to the underlying concrete interest Congress sought to protect in passing FACTA.

4

*See* 861 F.3d at 81 (emphasis added); *see also Gesten*, 2017 WL 4326101, at *5 ("This case presents a perfect example of a procedural violation that may result in no harm . . . ."); *Batra*, 2017 WL 3421073, at *6 (finding "alleged violation of FACTA constitutes a bare procedural violation," then evaluating "whether Plaintiff pled a concrete injury," and dismissing case); *Stelmachers v. Verifone Sys., Inc.*, No. 14-04912, 2017 WL 3968871, at *4 (N.D. Cal. Sept. 7, 2017) (same).[3]

### B. Congress—and the Overwhelming Majority of Courts—Have Definitively Concluded Printing an Expiration Date Causes No Harm or Risk of Harm.

Plaintiffs argue that they have suffered a material risk of harm sufficient to confer Article III standing because "Congress already found" that printing an expiration date "creates a risk of harm." (DE 14 at 15.) Noticeably absent from Plaintiffs' bold statement is any citation to legislative history whatsoever. And for good reason. As the Second Circuit recently concluded:

> We find it dispositive that in 2007, Congress clarified FACTA in the Credit and Debit Card Receipt Clarification Act of 2007 stating that "[e]xperts in the field agree that proper truncation of the card number, . . . *regardless of the inclusion of the expiration date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud." . . . . This makes clear that Congress ***did not think that the inclusion of a credit card expiration date on a receipt increases the risk of material harm of identity theft***.

*Crupar-Weinmann*, 861 F.3d at 81 (emphasis added). Contrary to Plaintiffs' argument, Congress specifically held the inclusion of an expiration date alone *does not* create a material risk of harm.

Recognizing FACTA's legislative history undercuts their "harm," Plaintiffs instead argue that the Clarification Act is irrelevant because FACTA still prohibits printing the expiration date. (DE 14 at 16-17.) This, however, conflates Article III with the merits of their claim. In *Spokeo*,

---

[3]   An extreme minority of courts have concluded that a violation of FACTA constitutes a violation of a substantive right that *per se* gives rise to Article III standing the moment the receipt is printed. Unsurprisingly, Plaintiffs rely on these decisions. (*See* DE 14 at 9.) As detailed in Darden's Motion to Dismiss, these cases run directly contrary to *Spokeo* and this Court's analysis in *Stacy*. (*See* DE 6 at 18-19); *see also Gesten*, 2017 WL 4326101, at *4.

5

for example, the Court recognized two FCRA violations (an incorrect zip code and the failure to give notice) that may support the merits of a claim, but do not create an injury-in-fact. *See Spokeo*, 136 S. Ct. at 1550. Likewise, here, that FACTA still has an expiration date redaction requirement does not prove Article III standing. Congress's view as to the effect of printing an expiration date, however, does *disprove* Article III standing. *Gesten*, 2017 WL 4326101, at *5 ("Congress's stated purpose in passing the Clarification does shed light on the proper interpretation of FACTA."); *Batra*, 2017 WL 3421073, at *6 ("Defendant does not rely on the Clarification Act to argue that it has no obligation to eliminate expiration dates from receipts. . . . But . . . this provision is not one in which a violation alone constitutes a concrete injury. So the issue before the Court is whether Plaintiff has alleged a material risk of harm in light of Defendant's alleged violation").

In light of the Clarification Act, nearly every court (and both Circuit courts) to analyze standing post-*Spokeo* in the FACTA expiration date context **has found no risk of harm exists**. *See, e.g.*, *Meyers*, 843 F.3d at 728–29 ("[W]ithout a showing of injury apart from the statutory violation, the failure to truncate a credit card's expiration date is insufficient to confer Article III standing."); *Crupar-Weinmann*, 861 F.3d at 82 (same); *Batra*, 2017 WL 3421073, at *8 (same); *Llewellyn*, 2017 WL 1437632, at *5 (same); *Fullwood v. Wolfgang's Steakhouse*, No. 13-7174, 2017 WL 5157466, at *5 (S.D.N.Y. Nov. 3, 2017) (same); *Weinstein v. Intermountain Healthcare, Inc.*, No. 16-00280, 2017 WL 1233829, at *4 (D. Utah Apr. 3, 2017); (*see also* DE 6 at 9-10).

Plaintiffs disregard this authority solely on the basis that it is out-of-Circuit. (*See* DE 14 at 11, 15-16.) The weight of courts dismissing FACTA cases for lack of standing is staggering— over two dozen courts have dismissed FACTA cases for lack of Article III standing post-*Spokeo*, against approximately six that have not. *See, e.g.*, *Batra*, 2017 WL 3421073, at *7 ("[T]he Court's conclusion that Plaintiff's allegations do not amount to a material risk of harm is in line with the

6

vast majority of other district courts."); *Gesten*, 2017 WL 4326101, at *3 (same). This Court previously found the weight of out-of-Circuit authority dismissing FCRA cases for lack of standing persuasive. *See Stacy*, 2017 WL 3531513, at *5. Plaintiffs point to no other basis to distinguish the voluminous cases dismissing identical suits, and relegate this case law to a footnote. (*See* DE 14 at 11 n.11.) This authority cannot be so readily disregarded.

Finally, Plaintiffs argue there is an "extensive line of decisions in this Circuit" finding standing in expiration date-only cases. (*See* DE 14 at 17.) In truth, *two* judges have so held post-*Spokeo* (the only two in the country), and these decisions are unpersuasive. (*See* DE 6 at 18-19.) These decisions—*Flaum v. Doctor's Associates*, 204 F. Supp. 3d 1337 (S.D. Fla. 2016) (Altonaga, J.); *Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016) (Bloom, J.); *Bouton v. Ocean Properties*, 201 F. Supp. 3d 1341 (S.D. Fla. 2016) (Bloom, J.)—stem from the mistaken belief that concrete harm is suffered the moment an offending receipt is printed. *See, e.g., Wood*, 201 F. Supp. 3d at 1340. Further, neither judge conducted the analysis utilized by this Court in *Stacy* to evaluate whether the alleged violation creates a material risk of harm to the substantive interest the statute seeks to protect. Indeed, neither judge addressed the Clarification Act's statement that the display of expiration date does not increase the risk of harm.

## II. PLAINTIFFS' RELIANCE ON CASES INVOLVING *ACTUAL* DISCLOSURE OF PRIVATE INFORMATION AND *ACTUAL* DISCRIMINATION IS MISPLACED.

Plaintiffs seek to leverage an injury-in-fact by analogizing to cases involving the *actual disclosure* of personal information to third parties. (*See* DE 14 at 6, 9, 19.) Specifically, Plaintiffs rely on *Eichenberger v. ESPN*, 876 F.3d 979 (9th Cir. 2017), *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), and *In re Horizon Healthcare Services Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017). These cases highlight why Plaintiffs suffered no injury-in-fact here. In *Eichenberger* and *Perry*, the plaintiffs alleged violations of the Video Privacy Protection Act

7

due to the *actual disclosure* of their video history to third party companies. *See Eichenberger*, 876 F.3d at 981-82; *Perry*, 854 F.3d at 1339. Both courts held the "disclosure of an individual's 'personally identifiable information' and video-viewing history [to a third party] offends the interests that the statute protects." *Eichenberger*, 876 F.3d at 983; *Perry*, 854 F.3d at 1341 (same). Likewise, *In re Horizon* involved the alleged *wrongful dissemination* of personal information through a data breach that resulted in a third party stealing and accessing personal data. *See* 846 F.3d at 640 ("They allege . . . the unauthorized dissemination of their own private information.").

Here, there was no disclosure of personal information. Plaintiffs fail to allege any third party ever saw or could have seen their credit card expiration date, let alone as a result of Darden's actions. Indeed, this Court already concluded a FACTA violation does not involve a "disclosure." *See Creative Hosp. Ventures, Inc. v. United States Liab. Ins. Co.*, No. 08-22302, 2011 WL 13173588, at *6 (S.D. Fla. Mar. 23, 2011) (Zloch, J.) ("Printing a non-truncated credit card receipt and providing it to the cardholder does not constitute publication because there is no dissemination of information to the public.") *aff'd* 444 F. App'x 370, 376 (11th Cir. 2011) ("[P]roviding a customer a contemporaneous record of a retail transaction involves no dissemination of information to the general public . . . .").[4] Plaintiff Saleh still has his receipts and Plaintiff Stevens alleges to have thrown his receipts away (and admits he does not know whether they contain his expiration date). (*See* DE 14 at 1-2); *see, e.g.*, *Gesten*, 2017 WL 4326101, at *5 ("Gesten has not shown that any disclosure of his private information actually occurred."); *Fullwood*, 2017 WL

---

[4] Plaintiffs rely heavily on *dicta* from Magistrate Judge Rosenbaum's order issued over a year earlier in the *Creative Hospitality* case. (*See* DE 14 at 18-19, quoting *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316 (S.D. Fla. 2009).) Plaintiffs fail to acknowledge this decision involved an insurance coverage action that preceded *Spokeo* by seven years, and which made no mention of the Congress's findings in the Clarification Act. Plaintiffs further fail to acknowledge this Court's subsequent order, which was affirmed by the Eleventh Circuit. *See Creative Hosp. Ventures, Inc.*, 2011 WL 13173588, at *6.

8

5157466, at *5 (finding, despite discarding receipts, "Plaintiff never alleges that Defendants made her receipts accessible to the public in any way"); *Kamal v. J. Crew Grp.*, No. 15-0190, 2017 WL 2443062, at *5 (D.N.J. June 6, 2017) (referring to the dumpster diver risk as entirely hypothetical).

Recognizing this fatal defect, Plaintiffs seek to create a "disclosure" by claiming Darden's employees saw Plaintiffs' credit card information. (*See* DE 14 at 19.) This argument is flawed. Plaintiffs contend they created an injury-in-fact simply by virtue of paying with a credit card. (*See id.*) Were this the case, every credit card transaction would result in an injury-in-fact as a result of the *consumer's choice* in *intentionally* disclosing *their own* card information. This is not a "disclosure" in any sense of the word, and every court to address this argument has found it without merit. *See, e.g.*, *Gesten*, 2017 WL 4326101, at *5; *Stelmachers*, 2017 WL 3968871, at *5.

And finally, Plaintiffs' attempt to analogize their action to cases involving *actual discrimination* is untenable. (*See* DE at 7, 10.) Plaintiffs rely on the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and the Eleventh Circuit's decision in *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1325 (11th Cir. 2013). *Havens* involved a housing tester who was actually discriminated against on the basis of race under the Fair Housing Act. *See* 455 U.S. at 374. *Marod* likewise involved an ADA tester who was actually discriminated against on the basis of his disability. *See* 733 F.3d at 1326. Plaintiffs' claims—that they received receipts displaying the expiration dates of their credit cards—are by no stretch analogous to *actual discrimination*. Cases like *Havens* and *Marod* may be relevant if Plaintiffs intentionally elicited receipts (akin to testers) *and suffered a material risk of harm*, but they did not. (*See* §1(b), *supra*).[5]

---

[5] Plaintiffs' reliance on *Church v. Accretive Health*—an unpublished FDCPA case—is misplaced. (DE 14 at 10.) *Church* concerned the right to receive truthful debt information. *See* 654 F. App'x 990, 994 (11th Cir. 2016). Numerous courts have found *Church* irrelevant to FACTA cases. *See Gesten*, 2017 WL 4326101, at *4; *Llewellyn*, 2017 WL 1437632, at *3; *Cruper-Weinmann v. Paris Baguette, Inc.*, 235 F. Supp. 3d 570, 576 n.3 (S.D.N.Y. 2017).

9

### III.  PLAINTIFFS CANNOT MANUFACTURE STANDING.

Plaintiffs' final toehold for standing is that, as a result of their receipts, they undertook prophylactic actions (*i.e.*, "monitor[ing] their credit") sufficient to constitute an injury-in-fact. (*See* DE 14 at 20-21.)  Plaintiffs' argument is predicated on the assumption that they believed certain actions were required to "prevent further injury." (*Id.*)  As detailed above, however, Congress determined the presence of an expiration date *cannot* increase the risk of harm. *See* Clarification Act, 122 Stat 1565 (finding that proper truncation of the card number "regardless of the inclusion of the expiration date" prevents identity theft or credit card fraud); *Meyers*, 843 F.3d at 728-29; *Crupar-Weinmann*, 861 F.3d at 82 (same); *Batra*, 2017 WL 3421073, at *8 (same).

Because Plaintiffs had no risk of harm—let alone a certainly impending risk— prophylactic actions *are not* an injury-in-fact. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 417 (2013) ("Because respondents do not face a threat of certainly impending [harm], the costs that they have incurred to avoid surveillance are simply the product of their fear of surveillance, and . . . such a fear is insufficient to create standing.").  Plaintiffs disregard *Clapper* on the specious basis that *Clapper* did not involve "federal privacy rights." (DE 14 at 21.)  This distinction finds no basis in case law or common sense.  The holding of *Clapper*—that "enterprising plaintiff[s]" cannot "secure a lower standing for Article III standing simply by making an expenditure based on a nonparanoid fear," *Clapper*, 568 U.S. at 416—applies equally here. *See, e.g., Stelmachers*, 2017 WL 3968871, at *4 ("Plaintiff cannot 'manufacture' standing by inflicting a burden on himself out of a fear of future identity theft that is nothing more than a remote prospect.").

### CONCLUSION

For the foregoing reasons, Darden respectfully requests this Court to: (i) dismiss this action pursuant to FRCP 12(b)(1) and (ii) award all such other relief deemed equitable and just.

DATED: January 4, 2017					Respectfully submitted

/s/ Mark Schellhase

Mark S. Eisen, Esq. (admitted *pro hac vice*)
meisen@beneschlaw.com
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
333 West Wacker Drive, Suite 1900
Chicago, Illinois  60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192

Mark Schellhase, Esq.
mark.schellhase@gray-robinson.com
**GRAY ROBINSON**
Mizner Park Office Tower
225 N.E. Mizner Blvd., Suite 500
Boca Raton, Florida 33432
Telephone:  (561) 368-3808
Fax:  (561) 368-4008

*Counsel for Darden Restaurants, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **DARDEN RESTAURANTS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)(1) FOR LACK OF ARTICLE III STANDING** was served upon all interested parties using this Court's ECF filing system this 4th day of January, 2017.

/s/ Mark Schellhase